## No. 436

### First Circuit

## McBRIDE v. LIFE & CASUALTY INS. CO.

(May 7, 1929.  Opinion and Decree.)
(June 10, 1929.  Rehearing Refused.)

P. L. Ferguson, of Leesville, attorney for plaintiff, appellee.

Fern M. Wood, of Leesville, attorney for defendant, appellant.

MOUTON, J. Plaintiff was injured October 18, 1921, while employed by the White Grandin Lumber Company and brings this suit against the defendant, on an insurance policy issued to him by that company on March 22, 1920.

He alleges that the defendant company paid him eight dollars ($8.00) a week under the policy from the time he was injured to the 23rd day of April, 1928, at which time the company ceased and refused to continue these payments. He asked, because of the refusal of defendant to make the eight dollar ($8.00) weekly payments, the sum of sixteen dollars ($16.00), the double amount of the weekly payments as a penalty, reasonable attorney's fees, and judgment for eight dollars ($8.00) per week during the life of the policy.

Judgment was rendered in his favor, as demanded, subject to the terms and conditions of the policy, from which defendant company prosecutes this appeal.

The defense is grounded on the clause of the policy wherein it is provided that the insurer will be paid when by reason of an accidental injury he is disabled of performing work of any nature.

Counsel for defendant says in his brief, that if plaintiff is able to work he cannot recover; if not, he is entitled to the payment of eight dollars per week under the policy. He contends also that the attorney's fees are not recoverable against defendant company, nor the double weekly payments under the policy, under Act 310 of 1910, because when it ceased its weekly eight dollar ($8.00) payments, its refusal to continue the payments was based on just and reasonable grounds.

Plaintiff testifies that while he was working for the White-Grandin Lumber Company, a log which was being hooked by a fellow employee slipped away; that in trying to get away he fell and another log rolled over his hip from which, as he expresses it: "They taken it off of me." As a result of the accident his bladder was broken and when he was first attended to by physicians, blood and no water was taken out of it. To relieve him two artificial channels, which we will not undertake to describe, were made as drains for his urine. Soon after he was injured in 1921, Dr. D. C. Willis attended him and under whose treatment he has been since that time.

Dr. Willis says he suffered in the inguinal region a ventral hernia on both sides about three inches long; that at times the post-scrotum hernia has a tendency to close up which develops temperature, caus-

ing soreness and stiffness in plaintiff's hips and back. Plaintiff, it is shown, cannot control his urine and as a result of this deplorable condition, the involuntary discharges have the effect of scalding his skin, causing it to peal off on his thighs and other parts of his body.

The foregoing description of plaintiff's condition has existed since he was injured and in which there has been no change according to the testimony of Dr. Willis. The fact is that plaintiff suffered other injuries from the accident, a recital of which we find unnecessary to give.

Defendant in the answer admits that it paid plaintiff eight dollars ($8.00) per week under the terms of the policy from the time of the accident up to April 23, 1928, at which time it refused to make any further payments. In the answer the reason given for this discontinuance of payments is, as it is alleged, that since the month of May, 1928, plaintiff was able to resume his customary work and is now able to "do ordinary and customary work, and that your respondent owes him nothing more." The fact is therefore established that defendant made these weekly payments under the policy for a period of more than six years. These payments by defendant's own pleadings show beyond question, that prior to April 23, 1928, plaintiff could not do "ordinary and customary work" and was entitled up to that date to his weekly instalments under his contract of insurance.

Dr. Willis, who treated plaintiff from the very beginning of his troubles, says, that there had been no change for the better in plaintiff's condition from April 23, 1928, until the time of the trial, nor before "that either."

Several physicians testified as experts in the case but Dr. Willis was the only one who had actual knowledge of plaintiff's condition prior to April 23, 1928. As he testifies that there had been no change for the better in his condition up to that time, since, nor before, it must be held that there is no basis for the defense which is embodied in the answer of defendant, that since the month of May, 1928, and now, that plaintiff is able to do "ordinary and customary work."

The weekly payments under the policy prior to April 23, 1928, carried the admission that before that date plaintiff was unable to do work of ordinary or customary character, or else it is obvious they would not have been made. As there has been no change in plaintiff's condition, it is likewise evident that he cannot perform work of that character from which it legally results that the weekly payments should have been continued under the terms of the policy.

Plaintiff, an ignorant negro, testifies that he can do a little "piddling" "traficking" and such light work by which he means work requiring very little straining or exertion. Dr. Willis is emphatic in his opinion that he cannot do work of ordinary or customary character and so are two other physicians who testified in behalf of plaintiff.

Five physicians were examined as experts by defendant. Three said he could do work of ordinary character; one said he would have to select his work; and the other, that in the summer he would be limited in his plowing, on account of irritation to his legs and that he would be able to do "selective light work."

Another witness, Mr. Lewis, a neighbor of plaintiff, testified that he saw him cut trees with the axe and actually picked some

up and walked along with them which were twenty feet long, measuring four inches at the butt. It is probable that the lower court was inclined to believe that there might have been a little exaggeration in the testimony of Mr. Lewis, considering plaintiff's condition as described by his physician and other physicians who testified in the case.

As it appears that plaintiff was in no better condition since April 23, 1928, than he had been prior thereto, for the reasons hereinabove given, it must be concluded that he was not able to do ordinary and customary work since that date. In addition thereto, we find, that the preponderance of the evidence shows that he could not, since April 23, 1928, do work of that character. It follows from the foregoing that defendant had no just and reasonable grounds to cease its payments to plaintiff on April 23, 1928, and is therefore liable to plaintiff for double the amount due under the policy, and for attorney's fees under Act 310 of 1910.